UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ASHLEY PAGE GREENE**

**VERSUS**

**NEVRO CORPORATION, ET AL.**

**CIVIL ACTION**

**NO. 23-CV-1648-JWD-RLB**

### RULING ON NEVRO CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Before the Court is *Nevro Corporation's Motion to Dismiss Plaintiff's First Amended Complaint* (Doc. 10) ("*Motion*") brought by defendant Nevro Corporation ("Nevro" or "Defendant"). It is opposed by plaintiff Ashley Page Greene ("Greene" or "Plaintiff"). (Doc. 23.) Nevro filed a reply memorandum. (Doc. 25.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is granted, and Greene is given twenty-eight (28) days within which to amend her complaint.

**I.     ALLEGATIONS IN THE *COMPLAINT***

This is a medical product liability case combined with a medical malpractice case. In her *Complaint*,[1] Greene alleges that on or about December 7, 2022, neurosurgeon and defendant Charles Bowie, M.D. ("Bowie") surgically implanted into Greene's spine a spinal cord stimulator ("stimulator") designed and manufactured by Nevro. (Doc. 1 at 2, ¶ 4.) She alleges that following the surgery, she suffered extreme pain and increasing difficulty maintaining balance (*id*. ¶ 5) but, despite the surgical removal of the device (*id*. at 3, ¶ 8), she eventually "suffered severe, permanent

---

[1] Plaintiff's *First Amended Complaint* (Doc. 7) merely corrects the name of the defendant neurosurgeon and incorporates by reference all other allegations of the original *Complaint* (Doc. 1.) Therefore, all references are to the original *Complaint*.

nerve damage (neuropathy), cannot walk on her own or drive, ride in a car for more than an hour, has lost feeling in her legs and feet, lost her job, and is unable to live on her own" (*id*.).

Greene alleges the medical negligence of Bowie caused the injuries and damages complained of. (*Id*. at 3–4, ¶¶ 11–12.)[2] With respect to Nevro, Greene alleges:

> 14.
> In addition [, or in] the alternative, Plaintiff alleges that the spinal cord stimulator manufactured by Defendant Nevro Corporation was unreasonably dangerous and defective as defined by the Louisiana Products Liability Act [La. Rev. Stat. Ann. § 9:2800.51 et seq. ("LPLA")] in its design and/or manufacture and/or for its failure to provide adequate warnings and instructions to users in its use and implantation all of which proximately caused Plaintiff's injuries and damages, as aforesaid.
>
> 15.
> Further, after receiving notice of the untoward symptoms and findings post-operatively, Nevro, through its representative(s) for whom it is vicariously liable, failed to take any action to ensure that its spinal cord stimulator was not defective and the cause of Plaintiff's injuries, including, but not limited to contact, with Dr. Bowie and/or Neuromedical Center staff to diagnose the cause of her progressive symptoms.

(*Id.* at 4, ¶¶ 14–15.)

## II. ARGUMENTS OF THE PARTIES

### A. Nevro

Nevro argues that because the stimulator is a Class III medical device approved by the FDA "through its rigorous pre-market approval process," Plaintiff's claims under the LPLA are preempted by federal law. (Doc. 10-1 at 7.) Therefore, all state law claims are preempted except to the extent that the claims "'parallel' the duties imposed by federal law." (*Id*. at 8 (citing 21 U.S.C. § 360k(a); and then citing *Naquin v. Medtronic, Inc*., No. 20-30793, 2021 WL 4848838 at

---

[2] The Court notes that Greene has filed a separate Louisiana Medical Review Panel proceeding against Bowie and Neuromedical Center, PLC in the Medical Review Panel proceeding entitled *Ashley Greene v. The Neuromedical Center and Charles Bowie, M.D.*, PCF Number 2023-01161 (Docs. 14-5,14-6, and 14-7). Bowie and The Neuromedical Center, APMC, have filed a separate motion to dismiss. (Doc. 14.)

\*2 (5th Cir. Oct. 18, 2021) (quoting *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 321–22 (2008))).) To successfully plead a parallel claim, Plaintiff, at a minimum, must allege the violation of a specific FDA regulation and facts sufficient to permit a reasonable inference that such a violation occurred and that it caused the plaintiff's injuries. (*Id*. at 10.) Here, Plaintiff has done neither and specifically, Plaintiff's design defect claim, manufacturing defect claim, and inadequate warnings claim all fail in this regard and therefore must be dismissed. (*Id*. at 10–14 (citations omitted).)

Nevro insists that even without regard to the preemption issue, Plaintiff's *Complaint* fails to "offer *any* factual allegations in support of [her] claims [under the LPLA] and, thus, fails to state a claim . . . on which relief can be granted." (Doc. 10-1 at 1; *see also id*. at 3.) In the context of this products liability case, Nevro argues that the *Complaint* fails to offer any specific allegations as to how its stimulator was defective, what characteristics rendered it unreasonably dangerous, whether alternative designs existed, whether there was a likelihood that the product's design would cause Plaintiff's damage, and whether the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design. (*Id*. at 3–4 (citations omitted).)

Further, Nevro maintains that the *Complaint*'s LPLA's claim is devoid of any allegations as to Nevro's product specifications or performance standards and how this stimulator deviated from them (*id*. at 4–5), or how any alleged defect caused Plaintiff's injuries (*id*. at 3–5). Similarly, Nevro contends that Plaintiff makes no allegations regarding what product characteristic required instructions or warnings and how, if at all, the warnings and labelling were inadequate or deficient. (*Id*. at 5–6.) Nor does the *Complaint* address in any way the learned intermediary doctrine and fails in her pleading obligations in that regard. (*Id*.)

3

### B. Plaintiff

Plaintiff argues that Nevro's preemption argument fails because Plaintiff's "claims parallel claims for a manufacturer's acts and omissions prohibited by FDA regulations." (Doc. 23 at 1; *see also id*. at 5 ("A cause of action for product manufacturing defect inconsistent with a product's FDA approved design may be asserted against the manufacturer who sold the product, *in parallel* with a state products liability law." (citations omitted)).)

Regarding her alleged lack of any factual allegations, Plaintiff argues that she alleges that Dr. Bowie, her treating neurosurgeon, examined her "due to her progressive neurological decline . . . and in June or July 2023 advised Plaintiff that the cause of her symptoms was the spinal cord stimulator and that it should be removed immediately." (*Id*. at 2–3 (citing Doc. 1, ¶ 6).) According to Plaintiff, "this *factual* allegation alone places Nevro on notice of a possible manufacturing defect in this particular device from which it would not be immune." (*Id*. at 3.)

Plaintiff complains that because of Louisiana's short, one-year prescriptive period, Plaintiff "had no chance to examine [the stimulator] or even identify exactly what iteration of the device was used in her case . . . [and further,] had no notice that the device was FDA approved until Nevro filed its Motion." (*Id*. at 2.) Therefore, Nevro's *Motion* unfairly "seeks to deny Plaintiff . . . the evidence through investigation and discovery that might satisfy its curiosity." (*Id*.)

However, Plaintiff concedes that "with knowledge of the FDA approval and the application of the MDA to this case [that she now possesses], the allegations could no doubt be enhanced further." (*Id*. at 4.) Plaintiff asks for "preliminary discovery" before considering dismissal (*id*. at 8) but "should the Court feel that the specificity and plausibility of the claim requires further elaboration, Plaintiff seeks leave to amend her *Complaint*." (*Id*. at 4)

4

### C. Nevro's Reply

According to Nevro, Plaintiff concedes that her LPLA claims are preempted unless they are premised on violations by Nevro of duties that are "parallel" to those imposed by federal law, yet Plaintiff's *Complaint* and *First Amended Complaint* fail to allege that the stimulator violated such duties. (Doc. 25 at 1.) "[T]o plead a 'parallel' claim and escape preemption, a plaintiff must allege violation of a specific federal requirement and facts sufficient to support a reasonable inference that the federal requirement was violated and caused the alleged injuries." (*Id*. at 5 (citations omitted).) Plaintiff has not done so. (*Id*. at 5–6.)

More fundamentally, argues Nevro, Plaintiff fails to sufficiently plead a claim under the LPLA, even without regard to the preemption issue. (*Id*. at 2–4.) The operative complaint "does not provide any factual allegations from which the Court could reasonably infer that the [stimulator] had a design, manufacturing, or labeling defect." (*Id*. at 2.) Although Plaintiff contends that her physician told her that the stimulator was the cause of her injuries, this does not address the issue of whether the stimulator significantly deviated from the FDA approved design. (*Id*. at 4.)

In conclusion, the operative complaint is " 'devoid of any factual allegations as to how the [stimulator] was defectively constructed or composed' and contains no allegations as to 'how the unidentified defect caused plaintiff's injuries.'" (*Id*. at 4 (quoting *Lussan v. Merck Sharp & Dohme Corp.*, No. 17-3086, 2017 WL 2377504 at *2 (E.D. La. June 1, 2017)).)

### III.  STANDARD

In *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014), the Supreme Court explained: "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader

is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]; *Twombly*, 55[0] U.S. at 556 [ ]. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257[;] Twombly, 55[0] U.S. at 556 [ ].

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco*, 764 F.3d 500, 502–03 (5th

6

Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503 (citation omitted).

## IV.   DISCUSSION

Nevro's *Motion* argues that because its stimulator is a Class III medical device approved by the FDA, all state law claims are preempted except to the extent the claims "'parallel' the duties imposed by federal law." (Doc. 10-1 at 8–10.) It argues additionally that, putting aside the preemption issue, Plaintiff's operative complaint fails to plead sufficient facts to state a claim under the LPLA. (*Id.* at 3–6.) These arguments will be considered separately.

### A.  LPLA Allegations

"The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. Rev. Stat. Ann. § 9:2800.54(A). Thus, as the Fifth Circuit has explained:

> To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 260–61 (5th Cir. 2002) (citing La. Rev. Stat. Ann. § 9:2800.54(A)).

A product is "unreasonably dangerous" under the LPLA "if and only if" the product is (1) "unreasonably dangerous in construction or composition"; (2) "unreasonably dangerous in design"; (3) "unreasonably dangerous because an adequate warning about the product has not been provided"; and (4) failing to "conform to an express warranty of the manufacturer about the product." La. Rev. Stat. Ann. § 2800.54(B) (citing La. Rev. Stat. Ann §§ 9:2800.55–58).

7

Plaintiff's allegations regarding Nevro's fault are contained in the following two paragraphs of the original complaint (Doc. 1) and subsumed by reference in her *Amended Complaint* (Doc. 7):

> 14.
> In addition[, or in] the alternative, Plaintiff alleges that the spinal cord stimulator manufactured by Defendant Nevro Corporation was unreasonably dangerous and defective as defined by the Louisiana Products Liability Act [La. Rev. Stat. Ann. § 9:2800.51 et seq. ("LPLA")] in its design and/or manufacture and/or for its failure to provide adequate warnings and instructions to users in its use and implantation all of which proximately caused Plaintiff's injuries and damages, as aforesaid.
>
> 15.
> Further, after receiving notice of the untoward symptoms and findings post-operatively, Nevro, through its representative(s) for whom it is vicariously liable, failed to take any action to ensure that its spinal cord stimulator was not defective and the cause of Plaintiff's injuries, including, but not limited to, contact with Dr. Bowie and/or Neuromedical Center staff to diagnose the cause of her progressive symptoms.

The Court agrees with Nevro that Plaintiff's allegations are insufficient and, at best, are conclusory without any factual support whatsoever. Plaintiff alleges that the stimulator was dangerous and defective but doesn't say how. Plaintiff alleges it was defective in design but doesn't say how or whether there existed a feasible alternative design. She alleges that the warnings and instructions were inadequate but doesn't say in what way they were deficient or what they failed to warn or instruct about. Plaintiff seems to rely heavily on the fact that Greene suffered an unfortunate and unintended result from her surgery (*see, e.g.*, Doc. 23 at 3), but "[t]he occurrence of an injury does not give rise to the presumption that the design was unreasonably dangerous." *Fuller v. Eisai, Inc.*, 513 F. Supp. 3d 710, 717 (E.D. La. 2021) (Africk, J.) (quoting *Rivers v. Remington Arms Co.*, No. 17-17124, 2018 WL 746392, at *4 (E.D. La. Feb. 7, 2018) (Africk, J.)). *See also Celino v. Biotronik, Inc.*, 536 F. Supp. 3d 89, 106 (E.D. La. 2021).

8

Plaintiff alleges that co-defendant Bowie told Plaintiff that the "stimulator was the cause of her symptoms" (Doc. 1 at ¶ 6), but this allegation, accepted as true, does not necessarily mean the stimulator was defective and certainly does not allege the ways in which it was defective.

This case is very similar to *Batiste v. Stryker Corp.*, No. 19-574-JWD-EWD, 2020 WL 3451690 (M.D. La. June 24, 2020) (deGravelles, J). As in the present case, the plaintiff in *Batiste* complained that, particularly in medical products liability cases, it is difficult for a plaintiff to gather pertinent product information in advance of filing a complaint. This Court in *Batiste* stated:

> The Court is sympathetic to Plaintiff's argument that Defendants are likely to be in exclusive control of the product's "specifications or performance standards" necessary to identify with particularity deviations therefrom and that discovery may well be the only mechanism by which to obtain same. *See Morel v. Pinnacle Entm't, Inc.*, No. 16-627, 2017 WL 3719975 at *4-5 (M.D. La. May 19, 2017) (discussing *Bertrand v. Eli Lilly & Co.*, No. 12-0853, 2013 WL 12184299 (W.D. La. Mar. 13, 2013)); *see also Baudin v. AstraZeneca Pharm. LP,* 413 F. Supp. 3d 498, 506-07 (M.D. La. 2019). As the Court held in *Bertrand*, requiring a complaint to contain allegations of specific specifications violated when those specifications are in the sole possession of the defendant would make such a case "essentially impossible to bring in federal court. Clearly, that was not the intent of *Iqbal* or *Twombly."* *Bertrand*, 2013 WL 12184299, at *7–8; *accord Morel*, 2017 WL 3719975, at *6.
>
> In *Morel*, this Court also held it is not necessary for the complaint to provide a detailed technical description of deviations from the product's performance standards and specifications to be sufficient for Rule 12(b)(6) purposes as long as the complaint's description of the product failure is such that "the Court's experience and common sense" can lead the Court to the conclusion that "discovery could be reasonably expected to reveal relevant information as to plaintiff['s] claim [ ] for construction or composition defect under the LPLA." *Morel*, 2017 WL 3719975, at *5 (quoting *Bertrand*, 2013 WL 12184299, at *5[).]
>
> But Plaintiff's allegations here do not rise even to this minimum level. For this reason, the Court finds that Plaintiff has not stated a construction/composition claim under the LPLA, and Defendants' motion on this issue is granted.

*Batiste*, 2020 WL 3451690, at *6.[3]

---

[3] *See also Batiste v. Stryker Corp.*, No. 19-574, 2021 WL 1171880, at *8 (M.D. La. Mar. 26, 2021) (granting in part and denying in part defendant's motion to dismiss the plaintiff's amended complaint).

9

The Fifth Circuit and Eastern District of Louisiana also recognize the difficulty of pleading sufficient detail in a medical or pharmaceutical product liability case where much if not all of the product information is in the hand of the manufacturer and not generally available to the public. Yet, again, a certain minimum level of fact pleading is required to avoid 12(b)(6) dismissal.

> "[A]t least in the context of pharmaceutical [design defect] claims, courts do not require that plaintiffs 'plead extremely "detailed factual allegations" ' to survive a motion to dismiss." *Fuller*, [513 F. Supp. 3d at 710] (quoting *Flagg v. Stryker Corp.*, 647 F. App'x 314, 317 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678 [ ])). All that is needed to satisfy *Twombly's* plausibility standard are allegations sufficient " 'to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Flagg*, 647 F. App'x at 317 (quoting *In re S. Scrap Material Co.*, LLC, 541 F.3d 584, 587 (5th Cir. 2008)).
>
> Nonetheless, *some* allegation is required, even after *Flagg*. *See, e.g., Lewis v. Baxter Int'l Inc.*, No. 16-16391, 2017 WL 661324, at *4 (E.D. La. Feb. 17, 2017) (Fallon, J.) (concluding that, even in light of the difficulties posed by pre-discovery dispositive motions in products liability cases, "conclusory allegations" of a design defect were insufficient); *Pellegrin*, 2018 WL 3046570, at *5 (similar); *see generally Flagg*, 647 F. App'x at 318 (explaining that this relaxed application of *Twombly* and *Iqbal* does not allow "fishing expedition[s]" to proceed to "lengthy and expensive discovery"). *Flagg* does not require courts to accept wholly conclusory allegations. *See, e.g.*, *Dubroc v. Bristol-Myers Squibb,* No. 18-833, 2019 WL 3756469, at *4 (M.D. La. Aug. 8, 2019) (rejecting the notion that Flagg renders conclusory allegations sufficient).

*Celino*, 536 F. Supp. 3d at 106.

The same is true here but even more so since the allegations in *Batiste* were significantly more detailed than those here.

To the extent that paragraph 15 of the operative complaint (quoted above) can be read to allege a negligence cause of action, this is barred by the exclusive theories of liability set out in the LPLA. As this Court stated in *Batiste*,

> The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in" the LPLA. La. Rev. Stat. Ann. § 9:2800.52. "[F]or causes of action arising

10

> after the effective date of the LPLA, negligence, strict liability, and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA" *Stahl*, 283 F.3d at 261 (5th Cir. 2002) (citing *Jefferson v. Lead Indus. Assoc.*, 930 F. Supp. 241, 245 (E.D. La. 1996)). Thus, to the extent Plaintiff's suit makes claims for negligence, fraud and willful, wanton, malicious, reckless conduct and breach of implied warranty, these claims are barred by the LPLA's exclusivity provision. *See, e.g., Cooper v. Wyeth, Inc.*, No. 09-929, 2010 WL 2653321, at *2 (M.D. La. June 25, 2010) ("The Court finds that these claims [including a claim for negligence] do not fall into one of the four categories recognized by the LPLA, and thus, the Court dismisses these claims pursuant to Rule 12(b)(6) because they do not state a cognizable action under Louisiana law.").

*Batiste*, 2020 WL 3451690, at *10.

The Court finds that Plaintiff's allegations under the LPLA are insufficient and grants Nevro's *Motion* in this regard.

### B. Preemption

Plaintiff claims that the allegations of her complaint are sufficient to defeat Nevro's preemption claim because her allegations of state law violations "parallel" violations of the FDA requirements. (Doc. 23 at 4–6 (citations omitted).) But as Nevro correctly responds, "to plead a 'parallel' claim and escape preemption, a plaintiff must allege violation of a specific federal requirement and facts sufficient to support a reasonable inference that the federal requirement was violated and caused the alleged injury." (Doc. 25 at 5 (citing, *inter alia*, *Celino*, 536 F. Supp. 3d at 100).)

> When a manufacturer of such a device violates FDA regulations, a plaintiff may recover under state law tort theories provided that those theories "parallel" the federal violation. *Riegel* [*v. Medtronic, Inc.*], 552 U.S. [312,] 330 [(2008)] For a claim to be parallel, the state-law duty must not create any requirements that are different from or greater than the FDA requirements. *See id*. "Essentially, in a parallel claim, relief is sought under state law alleging that certain conduct of the defendant resulted in a breach of a state duty, that this conduct also resulted in a breach of an FDA-imposed federal regulation, and that certain damages resulted from this breach." *Chiasson* [*v. Medtronic Inc*, No. CV 16-3552], 2016 WL 4191837, at *4 [(E.D. La. Aug. 9, 2016)] "If the Plaintiff fails to properly plead her

11

parallel claim, that is, she pleads a violation of a state law that imposes different or additional regulations . . . her claim will be preempted." *Id*.

*Celino*, 536 F. Supp. 3d at 99.

In this case, Plaintiff's operative complaint fails to mention the FDA and, in fact, Plaintiff admits that her first notice that the device was FDA approved was in Nevro's *Motion*. (Doc. 23 at 2.) In addition, Plaintiff fails to allege any facts which would support a violation of the LPLA which might in some way parallel violations of federal law. The Court therefore finds that Nevro's *Motion* on the preemption issue has merit and must be granted in this regard as well.

### C. Amendment

Alternatively, Plaintiff seeks leave to amend. (Doc. 23 at 8.) "[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case citations in the note below make clear, dismissal under Rule 12(b)(6) generally is not with prejudice—meaning, not immediately final or on the merits—because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if there is no basis for concluding that the plaintiff can state

> a claim and thus permitting an amendment would be futile. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice would be to allow at least one amendment regardless of how unpromising the initial pleading appears because it usually is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief. Such a practice would be in line with the more forgiving treatment courts typically give to initial attempts to amend.

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (4th ed. 2024) (footnotes omitted).

Based on the above authority, the Court will act in accordance with "wise judicial practice" and, give Greene an opportunity to amend her complaint. Because the Court intends grant the motion to dismiss by Bowie and Neuromedical Center, PLC (Doc. 14) without prejudice to Greene's right to refile her suit against Bowie and Neuromedical Center, PLC, at the conclusion of the Medical Review Panel proceeding, the Court will give Plaintiff 45 days from the time the Medical Review Panel has rendered its decision to amend her complaint against Nevro Corporation to cure the above deficiencies, if she can.

The Court notes that courts in the Fifth Circuit have, in cases similar to the present one, stayed medical product liability cases pending the outcome of a related Medical Review Panel proceeding. *See, e.g. Hungerford v. Smith & Nephew, Inc*, No. 15-2754, 2016 WL 4499461, at *2 (W.D. La. Aug. 23, 2016) (collecting cases where a stay was and was not granted is similar circumstances). It is clear to the Court that Plaintiff's operative complaint as presently configured is insufficient and will need to be amended. By granting Plaintiff a period of time after the Medical Review Panel renders its decision, the Court will give the Plaintiff an opportunity to gain more information about the product and its role, if any, in Plaintiff's unfortunate outcome before having to file, if she so chooses, another amended complaint to overcome the deficiencies noted above. In so doing, there is little, if any, prejudice to Nevro.

13

V.      CONCLUSION

For the foregoing reasons, *Nevro Corporation's Motion to Dismiss Plaintiff's First Amended Complaint* (Doc. 10) is **GRANTED**, and Plaintiff Ashley Page Greene's claims against Nevro Corporation are **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall have forty-five (45) days from the rendering of the decision of the Medical Review Panel in the Medical Review Panel proceeding entitled *Ashley Greene v. The Neuromedical Center and Charles Bowie, M.D.*, PCF Number 2023-01161 (Docs. 14-5, 14-6, and 14-7) in which to amend the operative complaint to cure the above deficiencies. Failure to do so will result in the dismissal of her claims with prejudice.

Signed in Baton Rouge, Louisiana, on <u>January 31, 2025</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**